IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STEVEN O. HICKMAN,                    :
                                      :
          Plaintiff,                  :
                                      :
     v.                               :          Civ. No. 14-368-RGA
                                      :
CAPT. JOHN CORNWELL,                  :
                                      :
          Defendant.                  :

---

Steven O. Hickman, Georgetown, Delaware. *Pro Se* Plaintiff.

Megan Trocki Mantzavinos, Esquire, and Emily Kara Silverstein, Esquire, Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Wilmington, Delaware.  Counsel for Defendant.


## MEMORANDUM OPINION


June 29 , 2016
Wilmington, Delaware

ANDREWS, U.S. District Judge:

Plaintiff Steven O. Hickman filed this action pursuant to 42 U.S.C. § 1983. (D.I. 1). Plaintiff was held at the Sussex Correctional Institution in Georgetown, Delaware, when he commenced this lawsuit. He has since been released.[1] He appears *pro se* and has been granted leave to proceed *in forma pauperis*. Plaintiff and Defendant Capt. John G. Cornwell, a police office with the Milton Police Department, have filed cross-motions for summary judgment. (D.I. 49, 50). Briefing is complete.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, who is African American, alleges that Defendant violated his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution when a warrant issued and Plaintiff was arrested and detained without probable cause "other than [his] race." (D.I. 1).

On January 28, 2014, Plaintiff was arrested on multiple charges for the alleged sexual assault the day before of Jane Doe, an individual with intellectual disabilities. Plaintiff alleges that after Defendant learned of the alleged sexual assault from a Beebe Healthcare Sexual Assault Nurse Examiner ("SANE") nurse, he filed a criminal complaint and a warrant issued on January 28, 2014. (D.I. 2). Plaintiff alleges that it is clear from the face of the probable cause affidavit that there was no probable cause for a warrant to issue, other than Plaintiff's race. Plaintiff alleges that Defendant "intentionally falsely reported rape, arrested, detained, and incarcerated Plaintiff

---

[1]On February 1, 2016, the Court ordered Plaintiff to show cause why the case should not be dismissed for his failure to inform the court of his current address after mail sent to him was returned as undeliverable. (D.I. 60). Plaintiff responded by providing his current address to the Court. Therefore, the Court finds that Plaintiff has shown cause why the case should not be dismissed for his failure to keep the Court apprised of his current address.

knowing there was no rape," and that Defendant did not read Plaintiff his Miranda rights. (D.I. 1, ¶¶ IV.(4), (5)).  Defendant testified at a February 6, 2014 preliminary hearing, relying on the victim's statement. (*Id.* at ¶ 7.)

The record reflects that Defendant was contacted about a possible rape and advised that the victim, identified as Doe, had been taken to the Beebe Healthcare Center where a forensic rape kit was completed by a SANE nurse. (D.I. 51, ex. 1 at 3). Defendant learned from the SANE nurse that examination revealed a laceration to the posterior fourchette of the vagina from sexual penetration. (*Id.*)

Defendant interviewed Doe.  She told him that, on January 27, 2014, as she walked past Plaintiff, he called out to her. (D.I. 51, ex. 1 at 3).  The two of them spoke and then walked to a port-a-potty behind the Milton library. (*Id.*).  They both entered the port-a-potty where, Doe indicated, Plaintiff had difficulty locking the door behind him. .(*Id.*)  Doe stated that Plaintiff gave his name and phone number to her, which she wrote down in her journal. (*Id.*)  Doe stated that Plaintiff asked her how old she was, whether she had ever engaged in sex, and then he pulled up her shirt and starting  sucking her breast. (*Id.*)  Doe also stated that Plaintiff exposed himself more than once, even though Doe asked Plaintiff to "put it away." (*Id.*).  Next, Doe described Plaintiff smoking a "weird" pipe and blowing smoke in her face. (*Id.* at 4).  After questioning Doe, Defendant concluded that she had described Plaintiff smoking crack. (*Id.* at ex. 3 at 10-11).

Doe told Defendant that at some point during the incident, Plaintiff reached down her pants, felt around her vaginal area and used his finger to penetrate her. (D.I. 51, ex. 1 at 4).  Doe told Defendant that Plaintiff said he was going to "jerk off" while doing

2

this to her. (*Id.*) Doe asked Plaintiff to stop several times, she was crying, and said that it hurt. (*Id.*) Doe stated this went on for about five minutes and then Plaintiff stopped, and kissed her vagina. (*Id.*) Doe told Defendant that Plaintiff searched for her journal, and she later discovered that he had removed his name and phone number from it. (*Id.* at 3-4). The entire incident lasted fifteen to twenty minutes. (*Id.*). Plaintiff returned to the shelter where she was living and told the program manager what had happened. (*Id.* at 4).

Doe provided Defendant the name, "Mr. Hickman." (D.I. 51, ex. 3 at 20). Defendant showed Plaintiff a photo array with Plaintiff's photograph and asked her to identify the individual. (*Id.* at 21). Doe positively identified Plaintiff. (*Id.*). In addition, video surveillance placed Plaintiff and Doe near the Milton library on the day of the incident. (*Id.* at ex. 2 at 2).

On January 28, 2014, Plaintiff was arrested by the Milton Police Department on an outstanding capias from Family Court regarding unpaid child support. With Plaintiff in custody, Defendant reported to the station to interview him. (*Id.* at exs. 5, 7). The interview was recorded. (*Id.* at ex. 7). Before the interview began, Defendant gave Plaintiff his Miranda rights. (*Id.*).

Plaintiff asked Defendant what was going on, and he was told that Doe had said something happened in the port-a-potty. (*Id.*). Plaintiff denied any wrongdoing, stated that he no longer wanted to talk, followed by "I don't know what's going on. I don't know what's been/she said." (*Id.*) Defendant asked Plaintiff if wished to stop the interview, and Plaintiff responded with, "I wanna know what's going on." (*Id.*). Next, Plaintiff

3

asked Defendant if Doe had accused him of rape, and Defendant responded, "yes." (*Id.*).

During the interview, Plaintiff admitted to kissing Doe, entering the port-a-potty, kissing Doe's breasts, and exposing himself. (*Id.*). He denied doing anything inappropriate, denied that he placed his finger in Doe's vagina, stated that he never penetrated Doe, and denied raping her. (*Id.*) Plaintiff stated to Defendant that "[he] was trying to get some but it wasn't that kind of party." (*Id.*) Plaintiff asked Defendant what he was being charged with, and Defendant told Plaintiff he would get the paperwork which would let Plaintiff know what the charges were. (*Id.*) Defendant explained to Plaintiff that, given the evidence and the interview, Plaintiff would be arrested and arraigned, and the Attorney General would make the final determination whether to proceed. (*Id.*).

Plaintiff was arrested and arraigned on January 28, 2014 on charges of: (1) rape in the second degree; (2) tampering with physical evidence; (3) unlawfully administering a substance (drugs); (4) unlawful sexual contact in the third degree; and (5) indecent exposure in the second degree. During the February 6, 2014 preliminary hearing held in the Court of Common Pleas of the State of Delaware in and for Sussex County, Defendant provided testimony based upon the evidence and his interviews with Doe and Plaintiff. (D.I. 51, ex. 3). Defendant testified that, during Doe's interview, it was obvious that she had intellectual or learning disabilities. (D.I. 49, ex. A at 9, 18). The Court found there was probable cause for Plaintiff's arrest for the crimes. (D.I. 51, ex. 3 at 27). In addition, a grand jury found probable cause on two felony charges. (*Id.* at ex. 9). Plaintiff's public defender refused to file Plaintiff's *pro se* motion to dismiss

based on a lack of probable cause. (*Id.*) On September 10, 2014, all charges against Plaintiff were nolle prossed, citing [lack of] "prosecutive merit" as the reason. (D.I. 16).

During Plaintiff's June 22, 2015 deposition, he was questioned about evidence to support his claims. For the most part, Plaintiff answered the questions by saying that he did not remember, did not recall, or could not recollect. (D.I. 51, ex. 6)

With regard to his two million dollars damage claim, Plaintiff testified that has not filed tax returns in the past five years and has no recollection of how long he spent in jail as a result of the January 28, 2014 arrest. (*Id.* at ex. 6 at 42). Plaintiff testified that he self-published the book, "I found the greatest enemy in the world in the heart of the Bible," and he appeared on an Internet TV talk show on January 15, 2014 to market the book, but he did not make any money as a result of the publication of his book. (*Id.* at 44-47). Plaintiff testified that he "never said that [he] made any money off the book." (*Id.* at 57).

Plaintiff moves for summary judgment on the grounds that there are no "key" issues and facts in dispute. (D.I. 49 at 3). Defendant moves for summary judgment on the grounds that: (1) there was sufficient probable cause for Plaintiff's arrest; (2) Defendant mirandized Plaintiff; (3) Plaintiff provided an ambiguous request to stop the interview and immediately reinstated communication with Defendant following the request; (4) the State law claims fail as a matter of law as there is no evidence of injury or economic harm; and (5) in the alternative, Defendant is immune from suit. (D.I. 51).

## STANDARDS OF LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's

6

favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184

(3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury

could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the

non-moving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof, the moving party is entitled to judgment

as a matter of law. *See Celotex Corp.*, 477 U.S. at 322. The same standards and

burdens apply on cross-motions for summary judgment. *See Appelmans v. City of*

*Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

### DISCUSSION

**Probable Cause.** Plaintiff seeks summary judgment on the Fourth Amendment

claims, arguing that he was arrested without probable cause. Conversely, Defendant

argues there was probable cause for Plaintiff's arrest.

To succeed on a false arrest claim, a plaintiff must establish that probable cause

was lacking for his arrest. *See Groman v. Township of Manalapan*, 47 F.3d 628, 634-

36 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances

within the arresting officer's knowledge are sufficient in themselves to warrant a

reasonable person to believe that an offense has been or is being committed by the

person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.

1995). Probable cause "does not depend on whether the suspect actually committed

any crime." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). Under § 1983,

liability for false arrest upon a warrant may be found when it is shown "by a

preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or

with a reckless disregard for the truth, made false statements or omissions that create a

7

falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (citation omitted). "[I]t is irrelevant to the probable cause analysis what crime a suspect is eventually charged with . . . or whether a person is later acquitted of the crime for which she or he was arrested." *Wright*, 409 F.3d at 602 (internal citations and quotations omitted); *see also Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

Plaintiff argues that probable cause did not exist because:  (1) Defendant should have collected a DNA sample to learn if the DNA profile obtained from Doe was a hit before arresting Plaintiff; (2) Doe's medical examination did not determine that Plaintiff had caused the laceration to Doe's posterior fourchette; (3) Doe did not undergo a psychological evaluation to establish the reliability of her statements; (4) Defendant's testimony at the preliminary hearing was based upon his interview with a mentally disabled individual with some intellectual disabilities; (5) there was no physical evidence; (6) Defendant did not examine the port-a-potty; and (7) Defendant did not establish sexual penetration.  Probable cause, however, is not undermined by an officer's failure to "interview everyone who may have possessed relevant information" or to "explore every potentially exculpatory lead." *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001).  Probable cause is inherently "accusatory," not "adjudicatory." *United States v. Williams*, 504 U.S. 36, 51 (1992).  It does not require certainty, or even balance, but a *prima facie* showing: "[P]robable cause does not require [the complainant] to evaluate the totality of circumstances, both inculpatory and exculpatory, as a trier of fact guided by a reasonable doubt standard." *Trabal*, 269 F.3d

8.

at 251

Defendant's position that the overwhelming evidence demonstrates sufficient probable cause to arrest Plaintiff is well-taken. Defendant was within his rights to rely upon Doe's statements regardless of her mental capacity.[2] The record reflects that many of Plaintiff's statements made during his interview with Defendant corroborated numerous statements made by Doe. Doe described Plaintiff and then identified Plaintiff from one of six photos in a photo array. Further, Doe's statements were supported by the SANE nurse's findings upon examination.

Finally, the independent determinations of probable cause by the Court of Common Pleas, the Justice of the Peace, and the grand jury show that Defendant had probable cause to arrest Plaintiff and file the criminal complaint against him. *See Kaley v. United States*, __U.S.__, 134 S.Ct. 1090, 1097 (2014) (indictment fair upon its face and returned by properly constituted grand jury conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged); *see also Fisher v. Matthews*, 792 F. Supp. 2d 745, 781 (M.D. Pa. 2011) (noting "independent judicial determination" of probable cause as part of rationale for finding no disputed material fact on probable cause issue).

The Court finds that there are no material disputed facts, and that Defendant had probable cause to arrest Plaintiff. Plaintiff cannot prevail on his constitutional claims against Defendant. Therefore, the Court will grant Defendant's motion for summary judgment.

---

[2] Defendant disclosed Doe's mental limitations, both in the arrest affidavit (D.I. 2 at 3) and at the preliminary hearing. (D.I. 51-2 at 8, 10, 18-19, 23-24).

**Miranda.** Plaintiff alleges that Defendant failed to mirandize him and, later, continued to question him even though he indicated that he wished to stop the interview.

It is undisputed from the evidence of record that Plaintiff was provided his Miranda rights. In addition, while Plaintiff stated that he no longer wanted to talk, he followed that statement by continuing to speak to Defendant and asking questions. None of Plaintiff's statements were used against him in a criminal trial.

"The right protected under the Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation . . . is merely a procedural safeguard, and not a substantive right." *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994). While *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), prohibits the government from using "statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination," questioning a person in custody is not a basis for a § 1983 claim unless and until the incriminating statement is used in a criminal trial. *See Renda v. King*, 347 F.3d 550, 557–58 (3d Cir. 2003); *see also Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (it is not until the use of a defendant's statements in a criminal case that a violation of the Self-Incrimination Clause occurs).

There is no evidence of record that there was any criminal trial, and, necessarily, no evidence that any incriminating statements Plaintiff made were used against him in a criminal trial. Therefore, his Miranda claim fails. Accordingly, the Court will grant Defendant's motion for summary judgment on this issue.

10

**Slander**.  Defendant moves for summary judgment on the grounds that he is immune from liability, and there is no evidence of personal injury or economic harm. Plaintiff does not oppose the motion for summary judgment on the slander claim. Indeed, it is not clear to me that Plaintiff is pursuing slander in this case, or what the slander is supposed to have been.

Slander is oral defamation. *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).

In Delaware, there is an absolute privilege which protects attorneys and participants in litigation from actions in defamation in certain situations. *Nix v. Sawyer*, 466 A.2d 407, 410 (Del. Super. 1983); *see Sinex v. Bishop*, 2005 WL 3007805, at *4 (Del. Super. 2005).  The privilege protects judges, parties, attorneys, witnesses and other persons connected with the litigation. *See Sinex*, 2005 WL 3007805, at *4.  The privilege applies when ("1) statements [are] issued as part of a judicial proceeding; [and] 2) the alleged defamation is relevant to a matter at issue in the case." *Nix*, 466 A.2d at 410.  The privilege is absolute, as long as the statement was made pertinent to and in the course of the judicial proceeding.  Even a showing of malice will not divest the statement of its immune status. *See Sinex*, 2005 WL 3007805, at *4.  The question of whether the privilege attaches to an allegedly defamatory statement is a question of law for the court.

The evidence of record indicates that any statements made by Defendant occurred during the course of judicial proceedings, either when Defendant filed an affidavit that resulted in the issuance of the arrest warrant, or when Defendant testified at Plaintiff's preliminary hearing.  Because Delaware law clearly indicates that

11

statements made in and relating to judicial proceedings are privileged, Plaintiff cannot recover for slander.  Summary judgment on any slander claim is granted.

**Delaware County and Municipal Tort Claims Act.**  Defendant also moves for summary judgment on Plaintiff's Delaware tort claims of false arrest and defamation (to the extent he intended to raise them[3]) on the grounds that he is insulated from tort liability under the Delaware County and Municipal Tort Claims Act, 10 Del. C. § 4010 *et seq.* ("CMTCA").  Defendant also argues that Plaintiff has not shown any bodily injury or economic harm as is required for recovery under the CMTCA.

The Court agrees that Defendant is insulated from liability and, therefore, is entitled to judgment as a matter of law with respect to the Delaware tort claims asserted in the Complaint.  Section 4011(a) of the CMTCA provides in pertinent part: "[e]xcept as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recover of damages . . . ." 10 Del. C. § 4011(a).  Defendant, a Milton police officer, is an "employee" as defined by the CMTCA.  *See* 10 Del. C. § 4010(1) (defining employee as "a person acting on behalf of a governmental entity in any official capacity . . . .").

A governmental employee is immune from suit under the CMTCA "[e]xcept as otherwise expressly provided" by some other statute.  *See id.* at § 4011(a).  The CMTCA sets forth several exceptions to immunity, none of which are relevant under the facts alleged in the Complaint.  *Id.* at § 4011(b), (c).  There is a limited exception to the immunity provided by section 4011(a) that, "[a]n employee may be personally liable for

---

[3] The closest Plaintiff comes to raising the issue is by referring to "false report, false arrest under the Fourth Amendment."  (D.I. 55 at 37).  Given his *pro se* status, I will assume that the issue has been raised.

acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent." *Id.* at § 4011(c).

Plaintiff does not allege that he suffered bodily injury, or death as a result of his arrest and imprisonment, but he does allege he suffered property damage due to diminished book sales as a result of his arrest and detainment. Plaintiff testified that he had not filed tax returns in the past five years and, thus, failed to show a history of income or lost income. (D.I. 51, ex. 6 at 44). Plaintiff testified that he authored and had published a religious book, but was unable to sell it because he was titled a rapist. (*Id.* at 45, 47). However, there is no evidence that Plaintiff actually suffered any lost profits. (*Id.* at 44-47). Plaintiff explained that prior to his arrest, he had appeared on an internet TV talk show to market his book, but he did not make any money as a result of the publication of his book.[4] (*Id.*). In addition, Plaintiff testified that he did not recall anything that would support his allegations except for his attempted sales of his religious books. (*Id.*).

In addition, there is no evidence of record that Defendant acted outside the "scope of employment" or that any of his particular acts "were performed with wanton negligence or willful and malicious conduct." The record merely reflects that Defendant, in his capacity as an employee of the Milton Police Department, attempted to enforce

---

[4]There is no evidence of monies expended by Plaintiff in publishing his book. When asked if he had to pay anything out-of-pocket to get the book published, Plaintiff replied, "took me three years. I've been paying for three years." (D.I. 51, ex. 6 at 45). When asked, "do you know how much?" Plaintiff replied, "wow, no, no." (*Id.*)

13

Delaware's criminal laws. There is no evidence that he did so in a manner evidencing wanton negligence or willful or malicious conduct.

Plaintiff's claims that Defendant's conduct resulted in false arrest are not supported by the record. Moreover, the evidence of record does not support a finding that Defendant engaged in conduct outlined in § 4011(c) that would strip him of his immunity. He has absolute immunity from any tort liability arising out of his actions in effecting Plaintiff's arrest, including Plaintiff's claims under Delaware law of false arrest. Therefore, the Court will grant Defendant's motion for summary judgment as to the State tort claims.

## CONCLUSION

For the above reasons, the Court will deny Plaintiff's motion for summary judgment (D.I. 49) and will grant Defendant's motion for summary judgment.[5] (D.I 50).

An appropriate order will be entered.

---

[5]The Court does not address the issue of qualified immunity given that summary judgment is appropriate on other grounds.

14